IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| AARON F. THOMPSON, | ) | Civil No. 06-1356-JE |
| | ) | |
| Plaintiff, | ) | OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

H. Peter Evans
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, OR 97223
        Attorney for Plaintiff

Karin J. Immergut
U.S. Attorney
Neil J. Evans
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Johanna Vanderlee
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
        Attorneys for Defendant

OPINION & ORDER - 1

JELDERKS, Magistrate Judge:

Plaintiff Aaron Thompson brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Plaintiff seeks an Order reversing the Commissioner's decision and remanding this action to the Social Security Administration (the Agency) for further proceedings.[1] The Commissioner's decision is reversed, and the action is remanded to the Agency for further proceedings as specified below.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on April 9, 2003, alleging that he had been disabled since December 1, 2000, because of post-traumatic stress disorder (PTSD). Plaintiff's application was denied initially on July 9, 2003, and was denied on reconsideration on August 18, 2003.

---

[1]In his complaint, plaintiff asks that the action be remanded for an award of benefits or for further proceedings. In his opening and reply memoranda, however, he does not request that the remand require an award of benefits, but instead asks only that the remand require "a supplemental hearing to reassess the credibility of plaintiff and his RFC, reconsider all of the medical evidence and receive testimony from a medical expert familiar with Vietnam Veterans and PTSD about the onset date of disabling PTSD and depression."

Pursuant to plaintiff's timely request, a hearing was initially scheduled before an Administrative Law Judge (ALJ) for January 18, 2005.  The hearing was continued until March 22, 2005, in order to allow plaintiff the opportunity to secure representation.

Plaintiff; Larry Hart, Ph.D.; and Richard Ross, a Vocational Expert (VE); testified at the hearing, which was held before ALJ Timothy Terrill.

On August 24, 2005, the ALJ issued a decision finding that plaintiff was not disabled because he could work as a small products assembler, janitor, or hand packager.  In the present action, plaintiff challenges that decision.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds

that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## FACTUAL BACKGROUND

Plaintiff was born on October 15, 1947.  He was 53 years old at the time of the alleged onset of his disability in 2000, and was 57 years old at the time of the hearing before the ALJ.  After finishing high school, plaintiff joined the United States Army, and served from June 28, 1967, through January 30, 1969.  Plaintiff served in Vietnam as a helicopter door gunner and helicopter mechanic.

Plaintiff has past relevant work experience as a project manager and as a self-employed cabinet maker.

In a decision issued on March 13, 2003, the Veterans Administration (VA) determined that plaintiff had a 70% service-related disability based upon Post Traumatic Stress Disorder (PTSD) with a secondary minor depressive disorder. The VA also determined that plaintiff was entitled to a 10% disability based upon service-related tinnitus. Plaintiff's disability rating was subsequently increased to 100%, effective January 10, 2000, based upon a finding of "unemployability." At the time of the hearing before the ALJ, plaintiff was receiving approximately $2,300 per month, based upon the VA's determination of disability.

## HEARING TESTIMONY

1. Plaintiff's testimony

Plaintiff testified as follows at the hearing before the ALJ:

Following graduation from high school, plaintiff enlisted in the army with several friends because he could not find gainful employment and did not want to attend college. Three of plaintiff's friends were killed during their first two months in Vietnam. During 1971 or 1972, a fourth friend died in an automobile accident after returning home, and a fifth friend committed suicide after returning from Vietnam with

Post Traumatic Stress Disorder (PTSD).  These five had been plaintiff's close friends through grade school and high school, and plaintiff does not have other friends.

During his service in Vietnam, plaintiff was a helicopter mechanic and door gunner.  Three helicopters he was on were shot down in 1968, and plaintiff spent several days out before being rescued following the last of the crashes.

After returning to the United States, plaintiff worked for DuPont corporation for a few years, and then began working for Pioneer Masonry Restoration, a waterproofing business, where he worked for 24 years.  While attending high school, plaintiff had dated the daughter of the owner of Pioneer.  He became engaged to the owner's daughter, who was killed in an accident involving a log truck in 1974.  Plaintiff's fiancee was pregnant at the time, and her death, following the deaths of his other friends, was traumatic.

During the time plaintiff worked for Pioneer, the company grew from a small operation employing 9 workers to a substantial business with 125 employees.  Plaintiff worked as a project estimator, a job that was stressful and which required him to be away from his family much of the time. During the last few years that he worked for the company, the owner's children began to work for the company.  Plaintiff had problems working with the owner's children, whom he disliked intensely, and found to be irresponsible and incompetent.  He

had a number of shouting episodes with the owner's children, and was troubled by the owner's instruction to not interfere and to leave the children alone. When he was asked to take a sabbatical in 1995, he left the company "before they could fire" him. Plaintiff liked his job, but could not cope with the owner's wife and children. He still resents losing his job with Pioneer, a loss which he attributes to the owner's irresponsible children.

After leaving Pioneer, plaintiff started a cabinet-making business. Plaintiff had problems getting along with customers, some of whom he considered stupid, and his employees "were never good enough." The business failed, causing plaintiff to lose all his money. The business was closed by the date of the alleged onset of plaintiff's disability in December, 2000. Plaintiff was divorced in 1998, and lost his truck and his house because of the failure of the business. After his house was sold and he had paid his divorce settlement, plaintiff lived for several years on the small net proceeds from the sale of the house and on income from small jobs he performed. Because of all these problems, plaintiff began to drink heavily.

Plaintiff did not manage stress well even before his business failed. While working for Pioneer, he was often away from his family. In 1995 he was expecting a large bonus as compensation for the substantial time he was required to be

away from home.  He was angered and upset with his employer when he was given only a week off and a $3,000 bonus.

Plaintiff has problems supervising and being supervised. He has problems with "authority," and does not think he could work for more than a week because he would "find something wrong to critique and get in an argument with somebody" and would be asked to leave.

At the suggestion of a friend, plaintiff sought assistance from the Portland, Oregon Veterans Center (Vet Center) in 2000.  Plaintiff was counseled by Debbie Richter, and he enjoyed meeting her weekly for nearly three years. Plaintiff's drinking was "out of control" in 2000, and he was ticketed for a DUI in March, 2002.  Plaintiff drank because he was depressed, and drank nearly every day from 2000 to 2002. Plaintiff usually drank alone because he did not like "to socialize with other dumb drunks . . . ."  He stopped drinking in October, 2004, and was attending support meetings at the time of the hearing.


2. Medical expert's testimony

Dr. Larry Hart, a psychologist, testified at the hearing as a medical expert.

In response to the ALJ's instruction that he focus on plaintiff's condition in 2000, Dr. Hart testified that plaintiff suffered from an adjustment disorder with depressed

mood, symptoms of PTSD, and alcohol dependencies which, though in sustained remission at the time of the hearing, were not in remission in 2000. Dr. Hart noted that the SSA's evaluation form indicated that there was insufficient evidence to assess the "B" criteria on the psychiatric review form. He agreed that, according to plaintiff's records from the Vet Center, plaintiff was experiencing some difficulties at that time, but asserted that the "level of impairment" was difficult to assess. Though he agreed that plaintiff was having some difficulty functioning during 2000, Dr. Hart could not offer an opinion as to plaintiff's functional limitations during that time.

In response to the ALJ's questioning about the Global Assessment of Functioning (GAF) score of 40 assessed at the Vet Center in 2000, which indicated very significant difficulties, Dr. Hart opined that there was insufficient evidence to support that rating. Dr. Hart questioned the qualifications of the Vet Center personnel who had made the GAF assessment, and opined that there was not evidence in the record to support a GAF of 40. He continued:

> Judge, the evidence is so weak here, the need to
> make a decision on people with questionable
> credentials is very, very difficult, okay? Now,
> look at the, when I'm looking at the file as a
> year's span, it's extremely difficult to come up
> with a level of impairment. And adjustment disorder
> with depressed, with mixed anxiety depressed mood is
> a relative benign diagnosis. The more severe
> diagnosis would probably be the alcohol dependence,
> and if you'll look closely at the chart notes on the

PTSD, thy did spend some time documenting PTSD
symptoms.

Dr. Hart added that plaintiff had a moderate to severe problem

with alcohol throughout 2000, and indicated that, during that

year, that condition would have resulted in:

> -none to mild limitations in activities of daily
> living;
> -moderate limitations in social functioning;
> -moderate limitations in concentration, persistence
> or pace; and
> -no episodes of extended decompensation.

Dr. Hart opined that, during 2000, plaintiff's PTSD
resulted in:

> -no limitations in activities of daily living;
> -none to mild limitations in social functioning;
> -none to mild limitations in concentration,
> persistence, and pace; and
> -no episodes of extended decompensation.

Dr. Hart opined that, during 2000, plaintiff's adjustment
disorder with depressed mood resulted in:

> -none to mild limitations in daily activities;

-mild limitations in social functioning;

-mild limitations in concentration, persistence, or pace; and

-no episodes of extended decompensation.

Dr. Hart opined that 65% of plaintiff's impairment in 2000 resulted from alcohol abuse. In response to questioning by plaintiff's counsel, Dr. Hart agreed that the GAF rating of 41-50 later made by Dr. Cason, a psychiatrist, was reasonable for May, 2003, and opined that this assessment was consistent with the Vet Center's GAF rating of 40 made in March 2000. He indicated that his only problem with the 2000 GAF score was the credentials of the evaluator, and opined that plaintiff was more impaired in 2003 than in 2000 because of his continuing alcohol abuse during that period.

Also responding to questioning by plaintiff's counsel, Dr. Hart testified that individuals who are disabled by PTSD take medication, and that there is "good pharmacy for it." He reiterated that he thought that plaintiff's condition worsened from 2000 to 2003, because plaintiff was not being treated for his PTSD. Dr. Hart stated that he, like Dr. Monkarsh, would have assigned plaintiff a GAF of 51 to 55 in 2003. He added that such a rating is "compatible with employment."

3. VE's testimony

VE Richard Ross testified that plaintiff's past work as a project manager and estimator was light, skilled work, and that his work as a cabinet maker was medium and semi-skilled.

The ALJ posed a hypothetical describing a 57-year-old individual who had plaintiff's educational and work history, who "should only occasionally be required to have any interaction with the public or with co-workers," would be limited to simple, routine, repetitive work, and who should not be exposed to "hazardous environments, including things like moving equipment, machinery or unprotected heights."

The VE testified that such an individual could not perform plaintiff's past work, but could work as a small parts assembler or as a janitor.

In response to questioning by plaintiff's counsel, the VE testified that an individual who was markedly limited in ability to accept supervision would not be able to sustain employment. He also testified that "all work entails some stress," but that small parts assembler and janitor positions were not among the "hundred or so jobs that the Department of Labor has indicated are [unusually] stressful in nature."

**MEDICAL RECORD**

Plaintiff was initially evaluated for PTSD at the Vet Center on February 29, 2000, and was dropped from treatment on

February 26, 2001, with a prognosis of "fair to good without [treatment.]"

An intake report dated March 13, 2000, completed by Debra Richter, a VA counselor, and approved by a clinical coordinator, indicated that plaintiff had an anxious manner, impaired memory function, agitated motor activity, and fair judgment. Richter and the clinical coordinator diagnosed an adjustment disorder with mixed anxiety and depressed mood, chronic, related to PTSD; alcohol dependence; and PTSD, chronic, severe. Plaintiff's GAF was rated at 40. A note on the assessment states that "survivor guilt led to alcoholism, workaholism, estrangement, failure of marriage and career."

Plaintiff again contacted the Vet Center on July 15, 2002. He requested counseling and said he needed "basic services such as employment, housing, and food." A mental status evaluation completed at that time indicated that plaintiff was anxious and exhibited tense motor activity. Plaintiff reported chronic and current suicidal ideation, sleep disturbance, nightly nightmares, and low energy.

Plaintiff's file was closed on September 30, 2002, after plaintiff had missed a number of appointments. The file was reopened on October 22, 2002, after plaintiff again requested PTSD counseling services. At plaintiff's first counseling session, held on December 9, 2002, a social worker noted that plaintiff was nearly homeless, was using alcohol, and had been

ticketed for a DUI offense in March of that year.  Plaintiff
reported that he had suicidal ideation, and was socially
isolated.  He dropped out of treatment after two counseling
sessions, and his file was closed on April 9, 2003.

Plaintiff was evaluated by Gary Monkarsh, Ph.D., a
psychologist employed by the VA, on February 11, 2003.
Dr. Monkarsh noted that plaintiff reported that he experienced
daily intrusive thoughts about Vietnam, nightmares, and
chronic sleep disturbances.  Plaintiff told Monkarsh that he
woke up in cold sweats at night, could not stand anything
behind his back, and was "horrified" if he heard a car
backfire or heard a loud scream.  Plaintiff said that he had
low motivation and lacked interest in previously-pleasurable
activities.  Plaintiff also described a number of disturbing
events he had experienced in Vietnam, including witnessing the
deaths of civilians and military personnel, and killing
people.

Dr. Monkarsh summarized plaintiff's PTSD as follows:

> He was exposed to a number of life threatening
> events in Vietnam in which he responded with
> feelings of helplessness and horror.  He
> persistently re-experiences these events.  He
> persistently avoids stimuli associated with these
> events and has a numbing of general responsiveness
> and he suffers from depressive disorder symptoms
> including hopelessness, lack of interest in
> previously-pleasurable activities such as car
> racing, motorcycle riding, fishing, boating and
> socializing.  The veteran appears to be competent
> to manage his benefits so long as he maintains
> his sobriety.  He has displayed a history of
> abnormalities of conduct and judgment given his

past substance abuse problems, driving under the
influence of alcohol, and anger control
difficulties.

Dr. Monkarsh concluded that plaintiff was suffering from:
1) PTSD, chronic, moderate; 2) major depressive disorder,
secondary to PTSD; and 3) alcohol dependence in early
remission, (secondary to PTSD) per patient.  He rated
plaintiff's GAF as 51-55.

Mary Cason, M.D., an employee in the VA Psychiatry
Service, conducted an examination for PTSD on May 29, 2003.
Dr. Cason noted that plaintiff had an established service-
connected disability of 70% for PTSD with secondary minor
depressive disorder, and stated that she was conducting an
examination pursuant to plaintiff's request for an increase in
his disability claim.  Dr. Cason noted that the examination
was intended to help determine "what impact the veteran's
service-related disabilities only have on his ability to be
gainfully employed."

Dr. Cason reviewed plaintiff's work history and current
daily activities, and noted that plaintiff had a "well-
established diagnosis of post traumatic stress disorder."  She
opined that, "[w]hile it is certainly possible that his
current significant alcohol use on a daily basis entrenches
him in some of his difficulties including a fairly isolated
lifestyle that he seems to be content with, there are plenty
of clues in even his given report that he likely has had post

traumatic stress disorder impairing his ability to work for
several years prior to five years when he actually lost his
longtime job and has not since been able to obtain and
maintain gainful employment."  She continued:

> For example, many veterans of post traumatic stress
> disorder find a way of coping with their vigilance
> and central nervous system hyperarousal and
> inability to maintain close relationships by
> cultivating heavy work habits, working autonomously
> without supervision which he was able to do for
> several years, and traveling constantly as part of
> the job is sometimes a way of masking some of their
> difficulties that are more apparent to all when the
> vet is in the home circle constantly.  He certainly
> has found it much more difficult in the last five
> years to find another job that seemed fairly adapted
> to his symptoms, and in fact his symptoms have
> probably worsened in the last few years, but it
> seems clear to me that it is at least as likely that
> his post traumatic stress disorder is the biggest
> contributing factor in his inability to maintain
> gainful employment, as any other factor is.

Dr. Carson noted significant social isolation and
withdrawal, and rated plaintiff's GAF "at very best . . . in
the range of 41 to 50."[2]  She diagnosed PTSD, likely alcohol
dependence, and a history of depressive disorder.

In a decision dated August 20, 2003, the VA rated
plaintiff as "unemployable."  The decision stated that
plaintiff was granted "[e]ntitlement to individual
unemployability" because he was found "unable to secure or
follow a substantially gainful occupation as a result of

---

[2]According to the DSM IV, a GAF in this range indicates
"[s]erious symptoms (e.g., suicidal ideation, severe obsessional
rituals . . .) OR serious impairment in social, occuptational, or
school functioning (e.g., no friends, unable to keep a job).

service-connected disability . . . ."  It added that a VA exam "indicated that you have been unemployed for the last five years, and PTSD was the single biggest contributing factor in your inability to maintain gainful employment."

Dorothy Anderson, Ph.D., a non-examining psychologist, completed a Psychiatric Review Technique form dated July 1, 2003.  Dr. Anderson opined that there was insufficient evidence in the record she reviewed to make any diagnosis or determinations concerning plaintiff's mental or physical condition during 2000.

## ALJ'S DECISION

The ALJ found that plaintiff was last insured for disability insurance benefits as of December 30, 2000.  That finding is not challenged here.

The ALJ found that plaintiff had an adjustment disorder, PTSD, and alcohol dependence, which were "severe" impairments, but which did not meet or equal an listed impairment in Appendix 1, Subpart P, Regulation No. 4 (the Listings).

He further found that plaintiff had the residual functional capacity to perform "unlimited" exertion, within the environmental and non-exertional limitations set out in the hypothetical to the VE noted above.  In reaching this conclusion, the ALJ found that plaintiff's description of his symptoms and limitations was not wholly credible.  He also

found that the VA's disability determination, "effective May 2003, some 18 months after the claimant's date last insured, is not relevant in this case."  In assessing plaintiff's functional limitations, the ALJ concluded that plaintiff's "alcohol dependence, is not material in reaching a determination of disability."

The ALJ found that plaintiff could not perform any of his past relevant work, but that he could perform other work that existed in substantial numbers in the national economy, including work as a small products assembler, janitor, and hand packager.  Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## DISCUSSION

Plaintiff contends that the ALJ erred in rejecting all of the VA's disability ratings and supporting medical evidence, in concluding that plaintiff was not wholly credible, in failing to properly evaluate plaintiff's residual functional capacity, and in failing to include all of plaintiff's limitations in the hypothetical posed to the VE. I agree that the ALJ's decision was flawed, and that this action must be remanded for further proceedings.

1. <u>ALJ's rejection of VA's disability rating and supporting</u>
<u>medical evidence as irrelevant</u>

As noted above, the VA rated plaintiff as 70% disabled,
based upon his PTSD diagnosis with secondary major depression,
rated plaintiff's tinnitus as 10% disabling, and found that
plaintiff was "unemployable."  The ALJ found that the VA's
determination "effective May 2003, some 18 months after the
claimant's date last insured, is not relevant in this case."
In addition to citing a time gap between the VA's
determination and plaintiff's date last insured, the ALJ
rejected the VA's finding of disability on the grounds that
the record "reflects that, despite his alleged mental
impairments, [plaintiff's] judgment has not been altered as he
told his counselor he was 'giving his house to his daughter
rather than run the risk of foreclosure because of his erratic
earnings from his self-employed cabinet making business."  The
ALJ also dismissed the VA's disability determination on the
grounds that, aside from a "documented DUII, in March 2002,"
plaintiff "has not incurred legal difficulties because of his
alleged anger, and he did so at a time when he was constantly
interacting with the general public."

In concluding that the VA's disability determination was
not relevant, the ALJ rejected the opinions of Ms. Richter,
who had counseled plaintiff, on the grounds that she was not

"qualified to render" opinions about plaintiff's mental health or to "interpret clinical findings," and because her opinions were "derived entirely from [plaintiff's] subjective reports . . . ."  The ALJ effectively rejected the opinions of Drs. Cason and Monkarsh, summarized above, without comment.

The ALJ's summary rejection of the VA's disability determination does not satisfy the requirements for rejecting such a determination in this circuit.  In <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002), the court noted that, though a "VA rating of disability does not necessarily compel the SSA to reach an identical result . . . the ALJ must consider the VA's findings in reaching his decision."  The court added that, given the "marked similarity" between Social Security and VA disability programs," an ALJ must "ordinarily give great weight to a VA determination of disability." <u>Id.</u>  If he does not accord such weight to a VA disability determination, the ALJ must "give persuasive, specific, valid reasons for doing so that are supported by the record."  <u>Id.</u>

Given the ample evidence in the record that plaintiff had suffered from PTSD for many years, the gap between plaintiff's date last insured and the VA's disability determination is not a persuasive basis for rejecting that determination.  There is substantial evidence in the reports of Dr. Cason and Dr. Monkarsh supporting the conclusion that plaintiff had suffered from significant PTSD for many years before the VA determined

that he was disabled.  Dr. Monkarsh cited plaintiff's "history
of abnormalities of conduct and judgment," and Dr. Cason found
that plaintiff's diagnosis of PTSD was "well established," and
that PTSD had likely "impaired his ability to work for several
years prior to five years when he actually lost his long time
job and has not since been able to obtain and maintain gainful
employment."  In addition, at the hearing, the medical expert
opined that plaintiff's condition was probably worse when he
first sought VA counseling, which was near his date last
insured, than it was when he was later assessed by Drs. Cason
and Monkarsh and determined to be disabled.  Moreover,
opinions given after a claimant's date last insured are often
relevant to assess a claimant's condition at the time coverage
expired.  See, e.g., Smith v. Bowen, 849 F.2d 1222, 1225
(9th Cir. 1988) (medical reports "inevitably rendered
retrospectively" and should not be disregarded on that basis
alone).

Plaintiff's reported decision to transfer his house to
his daughter to avoid foreclosure is not persuasive evidence
that, as the ALJ inferred, his "judgment has not been altered"
by his impairments.  Nor does the ALJ's citation to
plaintiff's relatively benign criminal record provide
persuasive evidence, supported by the record, for concluding
that the VA's disability determination did not accurately
reflect plaintiff's impairment of social functioning.

Evidence of one rational financial decision and a relative paucity of "legal difficulties" fall far short of the "persuasive, specific, valid reasons" required to support rejection of a VA determination of disability.

The ALJ also erred in wholly discounting Ms. Richter's opinions concerning plaintiff's mental condition, given very near plaintiff's date last insured, on the grounds that she was unqualified to render such opinions.  Though counselors like Ms. Richter are not "acceptable medical sources," therapists, public and private social welfare agency personnel, and other caregivers are listed as legitimate sources of evidence concerning the severity of a claimant's impairments and the affect of the impairments on the claimant's ability to work.  See 20 C.F.R. § 404.1513(d). Contrary to the ALJ's assertion that Ms. Richter's conclusions were based only on plaintiff's "subjective reports," her summaries appear to be based, at least in part, upon her own observations, which appeared to be consistent with the later observations of Drs. Cason and Monkarsh.

The ALJ also erred in impliedly rejecting the opinions of Dr. Cason and Dr. Monkarsh, based solely upon the gap between the time of their reports and plaintiff's date last insured. The opinions of these examining medical sources were essentially uncontradicted, except perhaps by the opinion of Dr. Hart, a non-examining medical source who testified at the

hearing.  An ALJ must consider all medical opinions, see 20 C.F.R. § 404.1527(b), and must provide "clear and convincing reasons" for rejecting uncontroverted medical opinions, and "specific and legitimate" reasons for rejecting contradicted opinions.  The ALJ did not do so here.

2. ALJ's credibility determination

As noted above, in finding that plaintiff was not disabled, the ALJ found that plaintiff's testimony was "not entirely credible."  In support of that conclusion, the ALJ cited what he characterized as "numerous inconsistencies" in plaintiff's testimony.  The ALJ opined that plaintiff exhibited cognitive difficulties only "when he is not sober," and asserted that plaintiff's testimony "enlarges facts and time periods."  The ALJ noted that plaintiff had reported that he had received counseling for three years, but in fact had received counseling for only 10 months.  The ALJ further contrasted plaintiff's statement that he had lost his house in a foreclosure, and later assertion that he was giving the house to his daughter.  Finally, he characterized the emotional distress of which plaintiff testified as "incongruent with the 'affable (i.e. jovial, pleasant; sociable)' demeanor observed by Dr. Cason."

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc).  Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

Plaintiff here produced medical evidence of underlying impairments, and there is no affirmative evidence supporting the conclusion that plaintiff was malingering.  Accordingly, the ALJ was required to provide clear and convincing reasons for concluding that plaintiff was not entirely credible.  He did not do so.  Though plaintiff did not receive counseling on a regular basis for three full years, his assertion that he had received "three years counseling" is not a convincing reason for concluding that he was not wholly credible.  The record shows that, while he did receive actual counseling for 10 months, he received treatment, assessment, and evaluations from 2000 to 2003, a three-year period.  In the context of plaintiff's history at the Veterans Center, his testimony in this regard was not deceptive or untruthful.

The ALJ's citation to discrepancies in plaintiff's accounts of the loss of his house likewise does not provide a convincing basis for concluding that plaintiff was not credible.  From the administrative record, it is clear that plaintiff no longer has an ownership interest in his former residence.  It is not possible to determine exactly how that interest was lost, except that it appears to be related to the failure of plaintiff's business and to plaintiff's divorce.  Given the complexity of and duration of foreclosure proceedings, it is possible that what began as a foreclosure ended with plaintiff's daughter obtaining the house.  It is

also possible that, from his own perspective, the house was "lost," whether or not plaintiff's daughter ultimately obtained it. The discrepancy in plaintiff's accounts concerning the house are insufficient to support the conclusion that plaintiff is not generally credible.

Likewise, the ALJ's assertion that Dr. Cason reported that plaintiff was "affable (i.e. jovial, pleasant; sociable)" while plaintiff testified that he had significant social problems and depression does not provide a clear and convincing reason for concluding that plaintiff was not credible. Though the quotation marks in the ALJ's opinion infer otherwise, the referenced portion of Dr. Cason's report does not state that plaintiff was "affable (i.e. jovial, pleasant; sociable)." Instead, Dr. Cason reported that plaintiff demonstrated "a fairly affable manner and animated affect." Dr. Cason, a medical expert who examined plaintiff, found nothing in plaintiff's "fairly affable manner" that was inconsistent with the conclusion that plaintiff suffered from PTSD, or with the GAF of 41-50 which she assessed, which indicated serious symptoms or serious impairment in social or occupational functioning. Nothing in plaintiff's "fairly affable manner" led Dr. Cason to conclude that plaintiff was exaggerating, malingering, or was not credible in his description of his symptoms and impairments. If Dr. Cason did not find plaintiff's manner during her examination to be

inconsistent with the significant social difficulties she described in her report, that manner does not provide a convincing reason for concluding that plaintiff was not wholly credible.

When an ALJ improperly rejects a claimant's testimony regarding his limitations, and the claimant would be disabled if the testimony were credited, courts do not remand solely to allow the ALJ to make further findings regarding the testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citing Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988)). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). Here, as noted above, plaintiff does not seek an immediate award of benefits, but instead seeks an order remanding the action for further proceedings. This request is well taken, because I would not recommend remanding for an immediate award of benefits. Remand for an award of benefits is appropriate only if the ALJ failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.

1996).  In the present action, though errors preclude
affirming the ALJ's determination that plaintiff is not
disabled, it is not clear from the record before the court
that the ALJ would necessarily be required to find plaintiff
disabled if the evidence in question were credited.


3. RFC Assessment

     In his RFC assessment, the ALJ concluded that plaintiff
could perform work at all exertional levels, and that, because
of nonexertional limitations, plaintiff

>     is limited to performing no more than "simple,
>     routine, repetitive, work."  He also cannot perform
>     work requiring more than "occasional" interaction
>     with the general public.  Because of his alcohol
>     dependence, the claimant's environmental non-
>     exertional limitation requires that he avoid working
>     around hazards, such as working at unprotected
>     heights, or around machinery with exposed moving
>     parts.

     Plaintiff contends that the ALJ's assessment of his
residual functional capacity was legally insufficient because
it failed to address his ability to work on a "regular and
continuing basis," and failed to include all of plaintiff's
impairments.  I disagree with the first of these contentions,
and agree with the second.

     Plaintiff correctly notes that, according to SSR 96-8p,

>     Ordinarily, RFC is the individual's maximum
>     remaining ability to do sustained work activities in
>     an ordinary work setting on a regular and continuing
>     basis, and the RFC assessment must include a
>     discussion of the individual's abilities on that
>     basis.  A "regular and continuing basis" means 8

hours a day for 5 days a week, or an equivalent work schedule.

Plaintiff also correctly notes that, in assessing plaintiff's RFC, the ALJ did not explicitly refer to plaintiff's ability to work regularly and continuously.  However, because the ALJ had not found that plaintiff had any impairments that would likely interfere with plaintiff's ability to work regularly and continuously, his failure to explicitly address that issue was at most harmless error.

The ALJ's failure to consider any of the PTSD symptoms documented by Drs. Cason and Monkarsh is more significant.  These examining medical experts indicated that plaintiff's PTSD symptoms included problems with sleep, anger, irritability, anxiety, suicidal and homicidal ideation, hypervigilence, nightmares, intrusive thoughts, social withdrawal, reduced concentration, isolation, depression, and survivor guilt.  The ALJ neither included any limitations related to these symptoms in plaintiff's RFC nor provided a reasoned basis for discounting the opinions of Drs. Cason and Monkarsh.  On remand, the ALJ shall either provide clear and convincing reasons for discounting the opinions of these doctors, or include in plaintiff's RFC limitations that are consistent with their reports.

4. <u>Adequacy of ALJ's hypothetical</u>

Plaintiff contends that the VE's testimony that plaintiff could perform certain work did not constitute substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled because the ALJ's hypothetical did not include all of his limitations.

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (<u>citing</u> <u>Baugus v. Secretary of Health & Human Services</u>, 717 F.2d 443, 447 (9th Cir. 1983)). If the assumptions included in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value. <u>Id.</u>

At this point, it is not possible to determine with confidence whether the ALJ's hypothetical included all of plaintiff's limitations, because the ALJ did not provide reasons for not including any limitations based upon the symptoms referenced in the reports of Drs. Cason and Monkarsh. Other than noting the gap in time between the VA's disability determination and plaintiff's date last insured, the ALJ implicitly rejected the opinions of these doctors without providing a reasoned basis for doing so. On remand, the ALJ shall either provide clear and convincing reasons for concluding that the symptoms noted in these medical experts'

reports did not cause plaintiff significant limitations, or shall include these symptoms in assessing plaintiff's RFC.

## CONCLUSION

The Commissioner's decision denying plaintiff's application for disability insurance benefits is reversed, and this action is remanded for further proceedings. On remand, the ALJ shall consider the VA's disability determination and the medical evidence upon which that determination was based, including the observations of Debra Richter; either reconsider the conclusion that plaintiff is not credible or provide clear and convincing reasons for concluding that he is not; and either provide clear and convincing reasons for discounting the opinions of doctors Cason and Monkarsh, or include in plaintiff's RFC and in his hypothetical limitations that are consistent with their reports. If a medical expert is called to testify at a subsequent hearing following remand, that expert should be familiar with PTSD.

DATED this 28th day of August, 2007.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge